SIMMS v.. REISNER et al.

(Court of Civil Appeals of Texas. Jan. 27, 1911.)

1. MINES AND MINERALS (§ 52*)—GAS LEASE —INJUNCTION—EVIDENCE.

Evidence *held* insufficient to authorize a temporary injunction restraining defendant from boring for oil on certain property on which he held an oil lease, either on the theory that defendant had abandoned the lease, or that he was so unskilled in drilling such wells that he would be liable to bring in a well of salt water which would be destructive of all the wells in the neighborhood.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 52.*]

2. INJUNCTION (§ 132*)—SCOPE OF REMEDY— POSSESSION OF PROPERTY.

It is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of title, unless the possession has been forcibly or fraudulently obtained by defendant and the equities require that the possession thus wrongfully invaded be restored, and the original status preserved pending the decision of the issue of title.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 302; Dec. Dig. § 132.*]

Appeal from District Court, Harris County; W. P. Hamblen, Judge.

Suit by B. A. Reisner and others against E. F. Simms. From an order granting a temporary injunction, defendant appeals. Reversed.

P. H. Briant and R. U. Culberson, for appellant. Dannenbaun & Taub, for appellees.

PLEASANTS, C. J. This appeal is from an order of the district court for the Fifty-Fifth judicial district granting a temporary injunction in a suit in said court brought by appellees against the appellant.

The following concise and accurate statement of the substance of the pleadings and the issues presented thereby, and of the proceedings had in the lower court, and the result thereof, is copied from appellant's brief:

"In substance it was alleged in the petition that the appellees were the lessees in a certain oil and gas lease on a tract of land located in the Humble oil field in Harris county, Texas, and that the appellant had wrongfully entered on the land covered by said lease, had ejected appellees therefrom, and was, at the time of the filing of the petition, engaged in boring an oil well on said land.

"It was admitted in the petition that the appellant had, on or about the 3d day of March, 1905, entered into a contract with one W. E. Armstrong, who was then the owner of the land, by which contract the right was given appellant to bore for oil on the land in controversy. It was alleged, however, that about June, 1906, appellant abandoned said land because the production of oil thereon had become unprofitable, and

had delivered possession thereof to the owner, W. E. Armstrong.

"It was also alleged in the petition that appellees were the owners of a producing oil well on certain lands adjoining the tract in controversy, and that, if appellant was permitted to continue his operations on the Armstrong lease, there was danger that salt water would be brought into the field and destroy the producing well.

"The prayer was for an injunction restraining appellant from continuing to bore for oil on the land in controversy, for a writ of possession, and for a cancellation of the lease from Armstrong to appellant.

"A restraining order was issued on the 23d of November, 1910, and the cause set down for hearing on the 26th of November, 1910.

"At the time directed by the order of the judge, the appellant presented his answer, under oath, to the petition. In this answer the appellant claimed that he had in all respects complied with the terms of his lease with Armstrong, had paid the money consideration called for therein, had put down more wells than required by his agreement, and had produced on this lease a quantity of oil amounting in the aggregate to more than 600,000 or 700,000 barrels. He denied that he had ever terminated said lease, or delivered possession of the land covered thereby to Armstrong, or to Stockdick, the subsequent owner, but claimed that he had always asserted his rights under his lease to bore for oil on the land.

"Appellant alleged that, though the wells had ceased temporarily to be productive, 'it was his belief and expectation that in course of time more oil would drain into the basin beneath said lands from contiguous territory, and that when such condition presented itself it had always been his intention to bore again for oil upon the land embraced in said lease.'

"He alleged that the time having arrived when, in his judgment, there was sufficient accumulation of oil to justify operations he began putting down a well on the Armstrong lease, and was so engaged when stopped by the restraining order issued in this cause.

"He alleged that since the wells on the Armstrong lease had watered out, there had been no oil of consequence produced on lands adjacent or near to said Armstrong land, and that at all times he had held himself ready to protect said lands from drainage from outside wells, should any be dug.

"He denied that he was inexperienced in boring for oil on the land in controversy, or that there was any danger from his operations that salt water would be brought into the field.

"The cause having been heard on the petition, answer, and supporting affidavits, the court, on November 26, 1910, ordered the

restraining order to continue in full force and effect.

"The exhibits attached to the pleadings, and the affidavits produced on the hearing in the court below, establish the following facts:

"On March 3, 1905, W. E. Armstrong, who was then the owner of the property upon which appellant claims the right to bore the well, the boring of which was enjoined by the court below, made and entered into the following lease contract with appellant:

" 'The State of Texas, Harris County: W. E. Armstrong, lessor, in consideration of the sum of twelve hundred and fifty ($1,250.00) dollars in hand paid by E. F. Simms, lessee, receipt of which is hereby acknowledged, and of the further undertakings of said lessee hereinafter specified, does hereby let and lease unto said lessee, his heirs and assigns, lot number twenty (20) in block number one (1), and lot number twenty (20) in block number two (2) of the Cherry subdivision of the James Strange survey in Harris county, Texas, the terms of this lease beginning with this date and becoming permanent when the undertakings of the lessee hereinafter specified are performed. In consideration of the foregoing, the said lessee hereby agrees and binds himself to bore and develop two (2) wells upon the above-described land under the following conditions, viz.: He shall within thirty (30) days from this date begin boring of the first well on said land and complete the same as soon thereafter as may be possible with reasonable diligence and dispatch, and if said well shall produce oil in flowing quantities, then the said lessee agrees and obligates himself within 30 days after said oil is first brought to the surface, to begin the boring of another well on said tract and to complete the same as soon thereafter as may be done with reasonable diligence and dispatch. The lessee reserves the right to use all fuel, oil, and gas developed from either of said wells that may be necessary in operating and developing the same, and of the remainder of such oil and gas agrees and obligates himself to deliver to the lessor or his order, free of charge in any pipe line that may be convenient or accessible to said well one-fourth (¼) of such production of a flowing well and one-eighth (⅛) of such production of a pumping well. The lessee may bore other wells and produce oil therefrom upon the same terms and conditions at his option. Should any mineral and gas be discovered and produced on said land, then the parties hereto shall have the same proportionate interest in such production as in the oil and gas hereinbefore mentioned; lessee may terminate this lease when production becomes unprofitable and remove all improvements erected by him.

" 'Witness our hands in duplicate, at Houston, Texas, March 3, 1905.    W. E. Armstrong, E. F. Simms.'

"Appellant paid the cash consideration mentioned in this lease and immediately took possession of the property, bored several wells thereon, and fully complied with all of the terms and conditions of the lease contract. The wells bored by him were large producers and he successfully operated them until the latter part of 1905, at which time an invasion of water into this portion of the Humble oil field rendered the wells there unproductive and all further operation and development ceased. Appellant moved his improvements and machinery from the property in controversy and took the casing from one of the wells, but left the property in charge of Mr. H. A. McAnallen and requested him to take possession of it and prevent encroachment thereon. McAnallen was in charge of the property continuously, and no one else had possession of it until appellant returned thereto and began boring the well which he was enjoined from boring by the order of the court from which this appeal is prosecuted."

When the wells in this portion of the field became ruined by water, as before stated, it was anticipated that a sufficient quantity of oil from other portions of the field would probably find its way to this property to make its development again profitable. Shortly before appellant began boring the well in question appellees had brought in a productive well on an adjoining lot near the line of the lot in controversy, and appellant at once began to bore the well in question to protect his lease and prevent the oil under the property from being drained into and brought up through appellees' well. On April 25, 1907, W. E. Armstrong conveyed the property covered by appellant's lease to A. Stockdick for a consideration of $50, by deed of general warranty. On May 27, 1910, Stockdick leased the property to appellees for the purpose of development as an oil field, and appellees are claiming in this suit that under this lease they are entitled to the possession of the property. Before his sale to appellees Stockdick recognized appellant's right to further develop the property under his lease and tried to purchase same, but they could not agree upon the price. There is no evidence that appellant ever declared that he had canceled the lease or abandoned his rights thereunder, and neither the lease contract nor the possession of the property was ever delivered to Armstrong, or his vendees.

Ed. McCarvell, one of the plaintiffs, swore that "there was great danger that the defendant, because of his lack of knowledge of said field, will bring in a well producing salt water, and thereby injure or destroy the well now operated by the plaintiffs on lot 21, as well as destroy lot 20 and adjoining lot 19 as producing oil land." There is other testimony to the effect that the bringing in of a salt water well in any portion of an oil field is likely to greatly injure all of the wells in the field. McCarvell does not give any facts tending to show his knowledge of appel-

lant's skill as an oil operator or of appellant's familiarity and acquaintance with the conditions of this oil field. On the contrary, the undisputed evidence of several witnesses shows that appellant has been a successful operator in this field, had bored and operated a number of wells on this and adjoining lots, and there is no evidence that he ever brought in a salt water well. The undisputed evidence further shows that the drillers employed by appellant to drill the well in question "are competent men in their line of work, and have had much experience in drilling oil wells in the Humble oil field." Upon this showing we do not think the trial judge was authorized to grant the injunction. The opinion of the plaintiff McCarvell, that there was danger that appellant, because of lack of experience, might bring in a salt water well, is not only unsupported by any fact in evidence, but is against the undisputed testimony before set out showing that both appellant and the drillers employed by him were thoroughly competent and fully acquainted with all of the conditions existing in this oil field.

We cannot believe that the court upon this evidence found that there was such danger to the field and to appellees' wells from appellant's lack of knowledge of the field and his incompetency as an oil operator as would justify an order preventing him from operating in said field, and appellees do not so contend in their brief. If such was the finding, it cannot be sustained.

The question of whether appellant had surrendered or forfeited his lease, if that question is raised by the evidence, is not one which can be properly decided on the application for a temporary injunction. Appellant was in possession of the land, claiming under his lease. He did not acquire this possession by force or fraud, and, so far as the evidence shows, appellees were never in actual possession of the property. An injunction is not a remedy which can be used for the purpose of recovering title or right of possession of property, and it is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of the title, except in cases in which the possession has been forcibly or fraudulently obtained by the defendant and the equities are such as to require that the possession thus wrongfully invaded be restored, and the original status of the property be preserved pending the decision of the issue of title. Jeff Chaison Town-Site, Co. v. McFaddin, Wiess & Kyle Land Co., 121 S. W. 716.

The trial court did not order the possession of the land delivered to appellees, but he enjoined the appellant from using it for the purpose for which it was leased, and thereby rendered his possession worthless. This should not be done unless the use of the property by the appellant would cause injury to appellees against which they could only be adequately protected by an injunction, and this, as we have before said, is not shown by the evidence.

If appellees have a probable right to the possession of the property for the purpose of producing oil therefrom they might in a proper proceeding have the oil taken therefrom by appellant impounded pending the adjudication of their right in same, but the facts presented by this record do not, in our opinion, justify an injunction restraining appellant from boring for oil upon said property.

It follows that the order of the court granting said injunction should be set aside, and it has been so ordered.