**SAN JACINTO CONSTRUCTION CO. et al. v. SCANLAN et al.  (No. 9110.)**

Court of Civil Appeals of Texas. Galveston. Oct. 26, 1927.

1. **Injunction** �köm136(2)—In absence of force or fraud in obtaining possession, temporary injunction will not issue to transfer possession from one litigant, but merely to preserve original status.

It is never the office of a temporary injunction to oust the actual possession of one litigant and transfer it to the other pending trial of the action involving title to property, where possession has not been obtained by one litigant from the other by force or fraud, but rather merely to preserve the original status with reference to the possession between the parties until the issue of ownership has been settled.

2. **Eminent domain** ⊸70—City was not authorized to widen streets by taking abutting property without first acquiring land by condemnation or otherwise (Const. Bill of Rights, art. 1, § 17).

Under Const. Bill of Rights, art. 1, § 17, prohibiting taking of a person's property for other public use than that of the state without adequate compensation being first made or secured by the deposit of money, city was not author-

ized to widen streets by taking abutting property without first acquiring the right to use the additional land by condemnation or otherwise.

3. **Appeal and error** ⊸907(3)—In absence of statement of facts, conclusive presumption on appeal is that evidence justified trial court's finding in granting temporary injunction.

In absence of statement of facts or findings of fact, conclusive presumption on appeal is that evidence heard by the trial court justified the finding it will be deemed to have made in granting a temporary injunction against taking property claimed by plaintiffs for street widening purposes.

4. **Injunction** ⊸146—Verified answer was insufficient, as against plaintiff's sworn denial, to take from trial court right to choose between them on application for temporary injunction.

Verified answer was insufficient, as against categorical and sworn denial of all its averments by plaintiffs, to take from the trial court the right to choose between them by granting temporary injunction requested by plaintiffs.

5. **Eminent domain** ⊸292—Facts alleged respecting exclusive possession of land held to entitle plaintiffs to temporary injunction against taking property for street widening.

In suit against city and paving contractor for injunction and damages for taking for street widening purposes strip of property claimed by plaintiffs, facts alleged in plaintiffs' petition and affidavit respecting exclusive possession of the property by plaintiffs and their predecessors in title *held* to entitle plaintiffs to temporary injunction maintaining status quo pending trial of title to the strip involved.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by Kate Scanlan and others against the San Jacinto Construction Company and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

Sewall Myer and J. H. Painter, both of Houston, for appellant City of Houston.

T. S. Taliaferro and Shelby Fitze, both of Houston, for appellant San Jacinto Const. Co.

Carothers & Brown, of Houston, for appellees.

GRAVES, J. On July 11, 1927, the appellees sued the appellants San Jacinto Construction Company, a private corporation, and the city of Houston, a municipal corporation, alleging under oath:

(1) That they owned in fee simple under both a record and a limitation title block 404 of the city of Houston, that is, all land lying between Main and Fannin streets therein and extending northward from Pierce avenue to the concrete curb as it has existed for several years along the southwest line of Calhoun avenue, and that since 1871 they and their predecessors in title had continuously held, and they still held, peaceable and ad-

verse possession of this land, cultivating, using, and enjoying it.

(2) That appellants, although the property described had never been in possession of either of them, and had never been used by the city for street or any other purposes, had entered upon it, and were destroying the curb, herbage, and trees thereon, and were then threatening, not only to destroy a very valuable tree that had been located on the property since 1870 or 1871, but also to obliterate a large part of its grassplot, and place a hard-surfaced pavement thereon so that the same might be used for automobile and vehicle traffic.

(3) That appellants were trespassing, and threatening to trespass, upon the land by force, and, unless enjoined, would so enter upon it, and commit all these threatened acts, to the irreparable damage of the appellees, whom they had already damaged in excess of $500.

They prayed for temporary injunction prohibiting the commitment of the various acts of trespass alleged pending a trial, and, on final hearing, for perpetuation of the injunction, as well as damages, costs, etc.

The construction company merely answered with a demurrer and a denial, both general.

The city filed a number of special exceptions, which the record fails to show any action upon, and a special answer under affidavit of one of its attorneys that the material facts therein set forth were true, in substance to this effect:

(1) That, by virtue of the laws of the state and its charter provisions, it had full power, control, and management over all the streets and alleys within its limits; that, acting thereunder, after receiving a petition from more than 51 per cent. of the owners of property abutting thereon, it ordered the pavement of Calhoun avenue adjacent to block 404 owned by appellees herein, following out the prescribed procedure in all paving projects, giving the appellee proper notice several months before they filed the suit that Calhoun avenue would be paved abutting their property in block 404 to a certain specified width, and that plans and specifications therefor were publicly on file for their inspection and benefit, and then, in like manner, contracted with its colitigant herein to construct such pavement; that, in pursuance of that contract, the construction company proceeded with the undertaking, and not until it was at actual work upon the street adjacent to block 404 did the appellees make any protest.

(2) Further, that appellees' ancestor, T. H. Scanlan, on March 7, 1883, by duly recorded deed of that date, purchased from T. W. House, under special warranty, block 404 according to the plat of the city of Houston.

(3) "That the fence lines of plaintiffs have been situated as they now are for many years, and that the official map of the city of Houston does, and has since 1883, shown that the property involved in this suit was part of the street of the city of Houston used for sidewalk purposes, and the city tax rolls show that the plaintiffs herein have not claimed to own other than block 404, and have rendered and paid taxes only on block 404, of normal size, in keeping and conformity with the adjacent and surrounding blocks, since 1883 to this date.

"This defendant would further show that said portion of the street adjoining and abutting plaintiffs' property in block 404 and used as a sidewalk has been in use and possession of the city of Houston for the benefit of its citizens, and been used as a sidewalk since 1883, and for more than 25 years, without any adverse claim thereto being asserted by the plaintiffs herein.

"This defendant alleges that the property in controversy in this suit has been in the possession of the city of Houston and its citizens, and used and enjoyed by them for street and sidewalk purposes for a period of more than 10 years next prior to the filing of this suit, and that it has held and claimed the same adversely to all parties for street purposes for more than 10 years prior to the filing of this suit, and it here now specially pleads the 10-year statute of limitation in bar."

It prayed for judgment in its favor quieting the easement and title for street purposes to the strip in controversy.

By supplemental petition, after general demurrer to and general denial of all matters so adduced by both opponents, the appellees, under the oath of one of them, specially denied that the strip of property in controversy was shown on any map referred to in the deed to T. H. Scanlan as property of the city of Houston used for sidewalk purposes, affirming that it had never been in the city's possession, nor so used; that the curb appellants were threatening to tear out neither did, nor ever had, belonged to them, but had always been the property of appellees, having been built by themselves and their predecessors in title, and constituted a barrier to prevent the use of the land in controversy by the city and the public generally for vehicle traffic; that a like barrier in the form of a fence had previously existed along this curb line, and south of it, parallel to Calhoun avenue, and in line with the one tree that had already been partially cut down; a row of eight trees had stood on this property from the time it was purchased by their ancestor, T. H. Scanlan, until about 1920, when they began dying, two, however, remaining standing until one of them was cut down in the absence of affiant some time in June, 1927; that affiant, on then complaining to the city's engineering department, was as-

sured that the remaining tree would not be cut, if she would furnish affidavits showing ownership, which she did through her attorney on June 27, 1927.

Then follow detailed averments to the effect that, notwithstanding the assurance mentioned and later ones to the same purport from both the city's engineering department and the captain of its police force, and despite every effort to prevent it that she, her servants, and her attorney could make, the city's agents, with threats, trickery, and force, and even after they had been informed that the court had granted an injunction, ruthlessly proceeded, on July 11, 1927, to cut the tree down to all but a stump of about three feet in height. In addition to being so sworn to, this pleading was accompanied by the affidavit of R. B. Morris.

After issuing a restraining order against appellants on July 11, 1927, and directing them to appear and show cause on July 15th thereafter, the court on the latter date, after hearing the pleadings and the evidence in connection therewith, granted the temporary injunction in all respects as prayed for in the original petition of the appellees. The appeal challenges the correctness of that action.

While no statement of facts has been brought up, the record shows that the trial court, in addition to the pleadings, heard evidence, and, there being thus disclosed a bona fide and undisposed of dispute over the title to the strip of land involved, the controlling question in determining whether or not the writ was providently issued is: Which side was in possession of it at the time of the acts so enjoined?

[1] In such circumstances, the possession not having been obtained by one of the litigants from the other by force or fraud, it is never the office of a temporary injunction— pending a trial of the title to the property between rival claimants—to oust the actual possession of one and transfer it to the other, but rather to merely preserve the original status with reference to the possession between them until the issue of ownership has been settled. Simms v. Reisner (Tex. Civ. App.) 134 S. W. 278; Simms v. Pipe Line Co. (Tex. Civ. App.) 195 S. W. par. 3, at page 288.

Therefore the "balance of convenience," doctrine sometimes applied by the courts in the issuance of temporary injunctions—and invoked by appellants as applicable here— will not reach this situation.

[2] Neither the laws of the state nor the city's charter provisions authorize it to widen the streets by absorbing abutting property, without first acquiring the right to so use the additional land by condemnation or otherwise, since our Bill of Rights (Constitution, art. 1, § 17) affirmatively provides that no person's property shall be taken for other public use than that of the state—and the

acts enjoined in this instance obviously would have constituted such a taking—without adequate compensation being first made or secured by the deposit of money.

Recurrence must then be had to the issue of possession, and, when it is, it is found that the city in its answer, as against the twofold claim by the appellees of both a record and a limitation title—the one accompanied by, the other resulting from, more than 30 years of asserted occupancy—declared neither upon a conveyance nor a dedication, but rested its sole right in these premises upon such easement for street purposes as it may have acquired by its claimed use thereof for those purposes during more than 10 years.

[3] But, in the absence of a statement of facts, there being further no findings of fact, the conclusive presumption here is that the evidence heard by the trial court justified the adverse finding it will be deemed to have made in granting the injunction.

[4] Moreover, none of the maps referred to in the city's answer were made a part of, or attached to, the pleading, nor did it, so far as this court is advised, adduce other evidence than the mere verification of the answer even tending to show that it had so used this property. This answer, as against the categorical and sworn denial of all its averments by opposing litigants, was insufficient to take from the trial court the right to choose between them.

[5] As before indicated, however, there does appear attached to the appellees' supplemental petition, and in support of their contrary claim, the Morris affidavit, the material substance and effect of which is this: That his parents, formerly owned this block 404, and about 1870 or 1871 put fences on its outside lines all around the block, as well as a row of trees southwest of the fence on the Calhoun avenue side, near to and parallel with Calhoun; that all these fences were maintained in that same position from 1870 until it was sold in 1883, the entire property thereby inclosed being all that time claimed by, and held in the exclusive possession of, his father and mother, and that the fence on the northeast or Calhoun avenue side of the block remained in its original location until some time in the early 90's—years after Mr. Scanlan purchased the property.

The previously summarized averments of this petition, duly verified, were to the effect that this prior Morris possession had been taken up by T. H. Scanlan on his acquisition of the block in 1883, had been thereafter continuously maintained by him and his successors in ownership, and that they had replaced the fence along its Calhoun avenue line with the curb that was partially torn up by the appellants.

It thus plainly appears, we think, that, as the cause must be viewed in this court, the city has failed to show either such right in

or such possession and user of the disputed strip as negatived the clear right of the appellees to have what the trial court will be deemed to have found to be their possession of it held in statu quo, pending a trial of the title thereto.

It follows that the judgment should be affirmed; that order has been entered.

Affirmed.