### COOMBS et al. v. CITY OF HOUSTON et al.
### No. 9609.

Court of Civil Appeals of Texas. Galveston.

Nov. 20, 1930.

Rehearing Denied Jan. 29, 1931.

W. P. Hamblen, of Houston, for appellants.

Sam Neathery, Rodman S. Cosby, and William D. Orem, all of Houston, for appellees.

GRAVES, J.

Appellants protest against the granting below of a temporary injunction against them, whereby they, at the suit of the city of Houston and certain intervening individual owners of property abutting on that street as such, were restrained from interfering with the city, its agents, servants, or employees, in removing three obstructive houses from the part of Yale street within the city that abuts on blocks 316 and 324 of what is known as Houston Heights subdivision or addition, according to the Omaha & South Texas Land Company's plat thereof, duly filed for record in the office of the county clerk for Harris county on October 31st of 1892. The gravamen of their complaint is that Mrs. Coombs, at the hearing held thereon preliminary to the issuance of the writ, had by undisputed evidence shown herself to be then actually holding this property under a bona fide claim of title thereto that had emanated from her "peaceable and adverse possession thereof, coupled with its cultivation, use, and enjoyment," for an unbroken period immediately preceding that time of more than 35 years,

wherefore, notwithstanding the appellees' claim of a prior dedication of it as a street, she had at least demonstrated such a probable right thereto as made improper the issuance of the adverse temporary injunction in advance of a trial of her claim on the merits, if indeed she had not already shown full and all-preclusive title by limitation.

The learned trial judge, in entering the order, thus disposed of the heart of this contention: "The Court finds that neither the theory of improper dedication, or of title by limitation, advanced by the defendants as defenses in this cause are such as would be sustainable by a court either in case the issues were being tried on a permanent injunction, or in case of a trial before a jury."

This court approves the quoted view, and affirms the decree based on it; as we see it, the whole controversy is so determined by the plain application to it of Rev. St. art. 5517, to this effect: "The right of the State shall not be barred by any of the provisions of this title, nor shall any person ever acquire, by occupancy or adverse possession, any right or title to any part or portion of any road, street, sidewalk or grounds which belong to any town, city or county, or which have been donated or dedicated for public use to any such town, city or county by the owner thereof, or which have been laid out or dedicated in any manner to public use in any town, city, or county in this State; provided, this law shall not apply to any alley laid out across any block or square in any city or town."

By that statute, which was passed in 1887, five years before Houston Heights was platted in 1892, and seven years before Mrs. Coombs ever bought any adjoining property therein or began her possession of that here involved, the public policy of Texas with reference to how the title to land might be acquired by occupancy, or adverse possession, was imperatively declared to be that no person should thenceforth ever thereby acquire "any right or title to any part or portion of any road, street, sidewalk or grounds which belong to any town, city or county, or which have been donated or dedicated for public use to any such town, city or county by the owner thereof, or which have been laid out or dedicated in any manner to public use in any town, city, or county in this State."

Mrs. Coombs was thus in advance of all pretended tenure on her part charged with knowledge of the fact that she could never by any encroachment upon, or adverse possession of, this strip of land, no matter how long such use of it by her might continue, acquire any right or title to any of it that "had been laid out or dedicated in any manner to public use."

Plainly she could not be legally aggrieved, if she and her advisers then or thereafter were mistaken as to whether or not such a laying-out or dedication had already been effected; that accordingly becomes, we think, the sole material inquiry.

The facts in relation to that, too are undisputed, and, briefly summarized as far as deemed material, are:

The land company's plat of the Houston Heights subdivision, so filed for record in 1892, delineated the laying-out of about 1,700 acres of land surrounding the small strip here involved into blocks, lots, and streets, among which latter was Yale street, shown as adjoining on the west side thereof blocks 316 and 324 of the addition, and as running in both directions far to the north and south of those two blocks, all such streets and thoroughfares so appearing being dedicated to the public use in these express recitations: "The streets and alleys, as designated and marked on said plat and map are dedicated to the use of the owners of the property in said 'Houston Heights,' subject, however, to the following reservations hereby expressly made by said Omaha & South Texas Land Company and said O. M. Carter, viz.: (Here follows a number of specified rights and privileges retained by the dedicators, such as to construct and maintain street railways, sewers, light, gas, and power lines, in and under all the streets and alleys, all looking, however, to the continuation of the use thereof as such thoroughfares); subject to the above reservations, the streets and alleys in said Houston Heights as the same are laid out and marked on this plat and map are dedicated as such for the benefit of those who may hereafter purchase property in said Houston Heights, but the fee of said streets and alleys, is to remain the property of said Company and said Carter, subject to the use of the same for the streets and alleys, as above provided."

Prior to 1894, a number of sales of property elsewhere in the addition as so platted, together with one of lots abutting on Yale street itself, were made to various purchasers, all under descriptions thereof that referred to this recorded plat of the addition, all the lots therein having been so sold before 1904; that is, less than ten years before the inception of Mrs. Coombs' claim. In 1894, through three separate deeds, all of which likewise described the property conveyed therein by reference to this recorded plat of Houston Heights, appellant Mrs. Coombs acquired lots 13 to 21, inclusive, in such block 316, and lots 21, 22, and 25 to 34, inclusive, in block 324. Some time thereafter she erected the three houses and other equipments above referred to, which form the subject-matter of this suit, on the land abutting such blocks 316 and 324 on the west side thereof and shown by the plat to be a part of Yale street. These buildings, together with subsidiary construction, which she has been in possession of and has so maintained there for more than thirty years, constitute an obstruction on that por-

tion of Yale street, and prevent its improvement and use by the appellee city. This Houston Heights subdivision, when first thus platted, was merely an outlying tract of land in Harris county, but about 1918 became a part of the city of Houston. No affirmative act of acceptance by any governmental authority of any dedication of this part of Yale street appeared. The interveners below, co-appellees with the city of Houston here, were abutting property owners on Yale street in the addition; their holdings having also been bought by and described to them with reference to this recorded map thereof.

The undisputed facts thus developed, notwithstanding that no formal acceptance thereof as such appeared, in our opinion show a dedication of Yale street as delineated on the map in evidence that, under the adjudicated cases in Texas, clearly comes within the purview of the cited statute, R. S. article 5517. City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924, 925; Sanborn v. City of Amarillo, 42 Tex. Civ. App. 115, 93 S. W. 473, 474 (writ of error denied); North Texas Trust Company v. Brittson (Tex. Civ. App.) 279 S. W. 892 (writ of error dismissed); Krueger v. Railway Company (Tex. Civ. App.) 191 S. W. 151.

That being true, it follows, perforce of the lex scripta of the state, that Mrs. Coombs' long and free possession and use of it neither did nor ever could have matured in her any right to either temporarily hinder, or permanently prevent, the public authority from opening and maintaining it as such a public way; that having indisputably come out on preliminary hearing, obviously in consonance with the old maxim of equity to that purport, it would have been a vain and useless thing for the trial court to yet have refrained from visiting the instant legal consequences upon that unalterable fact by holding the cause for the mere form of a second proof of the same thing on a final trial. The rule therefore that appellants invoke as to the remedy by temporary injunction being a provisional one for the sole purpose of preserving the status quo of the controversy until a final trial on the merits, while undoubtedly existent, is the ordinary one obtaining under conditions of fact not controlled by the mandatory terms of this special statute; hence plainly cannot apply in this instance.

Not only was every fact held essential to the establishment of an irrevocable dedication by the Supreme Court in the Zorn Case, supra, shown in this one, but, upon the equivalent of the same state of facts as here exist, both it and the Courts of Civil Appeals in the cited Sanborn and Brittson Cases held the lack of acceptance thereof by the public authority unnecessary and immaterial, as concerned its own right to enforce such dedication.

We quote as follows from the two first mentioned:

From City of Corsicana v. Zorn: " 'If the owner of land lays out and establishes a town, and makes and exhibits a plan of the town, with various plots of spare ground, such as streets, alleys, quays, etc., and sells the lots, with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege, and advantage which the plan represents as belonging to them, as part of the town, or to their owners, as citizens of the town. And the right thus passing to the purchasers is not the mere right that the purchaser may use these streets or other public places according to their appropriate purposes, but a right vests in the purchasers, that all persons whatever, as their occasions may require or invite, may so use them. In other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use.' In Rowan v. Portland [8 B. Mon. (Ky.) 232], before cited, the court said: 'Nor can it be doubted that in purchasing and paying for his lot he purchased and paid for, as appurtenant to it, every advantage, privilege, and easement which the plan represents as belonging to it as a part, or to its owner as a citizen, of the town, and that a conveyance of each lot with reference to the map, or merely as a part of the town, was a conveyance of all these appurtenances, as ascertained by the map, which is the basis of the town, as such, and identified with it.' The effect of the deed, then, from Mrs. Zorn and her husband to the different purchasers of lots in Zorn's Addition, was to convey to such purchasers the right that they and all persons should be permitted to use the streets and alleys for the purposes designated upon the said plat for all time, and this conveyance vested in the public and in the city of Corsicana, as the organized representative of the public, the right to take possession of and use said streets and alleys whenever the progress and development of the town should make it necessary so to do. Meier v. Portland [16 Or. 500, 19 P. 610, 1 L. R. A. 856], before cited; Elliott on Roads & Streets, § 118; Town of Derby v. Alling [40 Conn. 410], before cited. It is objected on the part of Mrs. Zorn that there has been no acceptance by the city of the dedication. There was no necessity for such acceptance, for the right which vested in the purchasers of the different lots, and through them in the public, was irrevocable. It was not expected that the streets and alleys should all be opened at once, but, as is well known in the history of such transactions, many years might elapse before the settlement of that part of the city would require the use of such streets. In the case of Meier v. Portland, before cited, the court said: 'Nor does the proprietor or the purchasers antici-

pate that all the streets shown upon the plat will be immediately opened and used. It is generally known and understood that a large portion of them will not be required for use for many years after the town is laid out, that their necessity will depend upon its future development and growth, and that they will remain in abeyance until the public exigencies demand that they be opened and improved. Nor does the dedication impose any such burden upon the public as would imply that its acceptance might be refused.'"

From Sanborn v. City of Amarillo: "The dedication, then, being complete and irrevocable on the part of appellant, it becomes immaterial whether the city of Amarillo ever formally accepted the dedication, so far as its right to maintain the defense of dedication to the public is concerned. Appellant's offer to dedicate was sufficiently accepted by the public when some of its individual members acted upon the offer, and purchased with reference to the exhibited maps."

Further discussion is deemed unnecessary; the affirmance will enter.

Affirmed.

### On Motion for Rehearing.

■ Dismissing the applicability of R. S. art. 5517, by simply saying it "gives a court of equity no power to grant a temporary injunction for the forcible removal of a person in possession of property which might come under its terms," appellants, through their able counsel, as the major contention in their motion for rehearing, hark back to their original insistence, notwithstanding such enactment that it was legal lese majeste for them to be deprived of their claimed "continuous, peaceable, and adverse possession of the property in controversy for more than thirty-five years" in advance of a final trial, marshaling in support of the position an array of authorities laying down the well-settled general rule, in ordinary cases, that is thus stated by this court in San Jacinto Construction Company v. Scanlan, 300 S. W. 220, 222: "In such circumstances, the possession not having been obtained by one of the litigants from the other by force or fraud, it is never the office of a temporary injunction—pending a trial of the title to the property between rival claimants—to oust the actual possession of one and transfer it to the other, but rather to merely preserve the original status with reference to the possession between them until the issue of ownership has been settled. Simms v. Reisner (Tex. Civ. App.) 134 S. W. 278; Simms v. Pipe Line Co. (Tex. Civ. App.) 195 S. W. par. 3, at page 288."

As counsel urges, the quoted holding is typical of all that class of cases to which he so strongly appeals, but, to the contrary of his further view, it et id genus omne are far from resting upon the legal equivalent of the same state of facts as obtains here. In the first place, being delivered as ruling conditions occurring long before the passage of article 5517, and the city there having declared upon neither a conveyance nor a dedication of the property, it did not come within the purview of that act at all; in the second place, it was expressly grounded on a finding on the facts that there had been "thus disclosed a bona fide and undisposed-of dispute over the title to the strip of land involved"—in other words, that the Scanlans had shown out of their actual occupancy for many years before the passage of this statute at least a probable, colorable, or debatable title to the property, together with the consequent right of possession—whereas Mrs. Coombs in this instance, having begun her obstructive use of this land both years after it was shown to have been dedicated for street purposes and the cited statute had been in operation, by virtue of its directly inhibitory terms, had nothing that could be deemed "adverse possession," however long she may have continued it. She was therefore not on a parity with one who has an actual appropriation of land commenced and continued for the length of the limitation period under a claim of right, inconsistent with and hostile to the claim of another; rather she stood as one boldly challenging the public authority inhering in the city—her answer even admitting that she proposed to maintain her tenure by force, if necessary —without the possibility of ever acquiring such a bona fide claim of right, title, or possession, as this court was pronouncing upon in the Scanlan Case, since she indisputably had nothing but occupancy of what had been so dedicated as a street, and had never bought or otherwise acquired any right to any land outside of the block lines of the addition.

The rationale of the two Simms Cases, cited and relied upon for support of the Scanlan opinion, is the same; neither came within the purview of article 5517, but in both of them there was a like showing on the facts that the litigant in possession had what might at least be shown upon a full hearing of all the facts underlying the rival claims to amount to a right to maintain it.

These considerations, we hold, fundamentally distinguish all that line of cases from the one at bar.

Like this cause in the principle applied, however, though not involving a public street nor otherwise arising under the statute referred to, is Hudspeth v. Gugenheim (Tex. Civ. App.) 278 S. W. 952, 953, where essentially the same state of fact in purport as here came out in a different way on preliminary hearing; that is, the legal effect of the evidence was to negative any right of possession in Hudspeth, the actual

occupant of the property. The San Antonio Court of Civil Appeals, with the approval of the Supreme Court through its refusal of a writ of error, in affirming the granting at that stage of the proceeding of both temporary prohibitory and mandatory injunctions, said:

"The general rule in this state is that a mandatory injunction is not available for the purpose of dispossessing one who is in peaceable possession of land, pending an adjudication of the relative equities of those claiming the right of possession. But the rule is not so inflexible as to exclude all exceptions, for it has been relaxed so as to permit such injunctions in extreme cases of pressing necessity, and where the complaining party shows himself entitled to the interference of a court of equity and is without adequate and practical remedy at law. Sumner v. Crawford, 91 Tex. 131, 41 S. W. 994.

"Under that exception, the question in cases of this character becomes one of whether or not under the peculiar facts the case is one of a clear right and a pressing necessity, in which the ousting party is entitled to relief, but is without a practical and adequate remedy at law."

So the rule appellants invoke, notwithstanding the seemingly unconditional form of its statement in many authorities they rely on, was clearly not promulgated as a Procrustean bed that all instances of actual occupancy of land by claimants must be made to fit, irrespective of whether or not they are shown to have even a color of right to the possession thereof, but only to cases where, under the evidence then heard, it at least prima facie appears that there is enough substance in the claim, or of probability to the asserted right, as justifies a further trial of that matter on the facts. See, also, City of Llano v. Llano County, 5 Tex. Civ. App. 132, 23 S. W. 1008; Dozier v. Austin (Tex. Civ. App.) 253 S. W. 554, 555; Franklin County v. Huff, 43 Tex. Civ. App. 355, 95 S. W. 41; Joyce on Injunctions, vol. 2, § 1285; Miller v. Lynch, 149 Pa. 460, 24 A. 80; Galveston, H. & S. A. Railway Company v. City of Eagle Pass (Tex. Civ. App.) 249 S. W. 268; City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924.

■■ But further insistence is made that the city had a full, complete, and adequate remedy at law in an action of trespass to try title to this claimed strip of street, wherefore the remedy by temporary injunction should have been denied.

This contention, we think, fails initially to take into account the materially different status toward each other of these litigants from that which ordinarily obtains between private individuals only concerning land unaffected with a public interest; the city here, as the embodiment of the public authority, with all the consequent power over and responsibility for the dedicated streets within its limits, not only had the right, but the nondelegable and inescapable duty to the public, as well, to at all times open, protect against purprestures, and maintain them in usable condition as such ways. In the exercise of those high powers and duties, under the authorities last above cited, irrespective of what might be the slower and less effective remedies, if any, available at law, it undoubtedly had the affirmative right to summarily remove any such obstructions therefrom, either through the outside exercise of its police powers, or by securing a mandatory injunction from a court of equity, not being remitted to a mere action in trespass to try title, if that would have lain in these circumstances.

In Dozier v. City of Austin, supra, the San Antonio Court of Civil Appeals put the matter in this way: "A city cannot recover damages arising from the obstruction of streets. It has the right to have them removed. Appellee is a corporation organized by its citizens to administer their affairs, have their laws executed, protect their streets, alleys, and public grounds from trespassers and invaders of their rights, and, in seeking the aid of the courts of Texas to remove obstructions from streets and alleys placed there by trespassers and those acting in defiance of law, it does not devolve upon such corporation to allege or prove damages or that it has an adequate remedy at law for such relief. It has no such remedy at law. The only matter to be alleged or proven was the invasion of a public right. Dillon, Mun. Corp. § 1130; State v. Goodnight, 70 Tex. 682, 11 S. W. 119; Oxford v. Willoughby, 181 N. Y. 155, 73 N. E. 677; Woodbridge v. Middlesex Water Co. (N. J. Ch.) 68 A. 464. This action was brought by the guardian of the public to conserve the rights which the public have in the alley as a highway. The duty rested on the city to have the obstruction removed. Joyce on Injunctions, § 1285, and authorities cited in footnote."

The Supreme Court dismissed that cause for want of jurisdiction, but the quoted declaration of the law is well supported by the authorities therein referred to, as well as those cited here, supra.

In this instance there were present, under the uncontroverted evidence heard, both the "pressing necessity" emphasized by the court in the Hudspeth Case, supra, in that the city had in process of construction on the portion of Yale street affected costly paving improvements, with attendant contractual obligations of magnitude, the appellants were, without a right in them of any sort, delaying and interfering with by maintaining their obstructions through threats and force, and the "invasion of a public right" deemed in

the Dozier Case, supra, to be the sole material consideration, in that a dedicated street of the city of Houston was being encroached upon to the extent of obliteration.

After the most painstaking reconsideration of the cause, we must revert to our original conclusion that the determining issue was whether or not a dedication of the street had been effected prior to the inception of appellants' claim. That having been determined adversely to them, it cannot be held that the learned trial court abused a sound discretion in issuing the writ they inveigh against.

The motion for rehearing has accordingly been overruled.

Overruled.