**CITY OF LOCKHART et al. v. COMMISSIONERS' COURT OF CALDWELL COUNTY et al.   (No. 6892.)\***

(Court of Civil Appeals of Texas. Austin. Nov. 25, 1925.   Rehearing Denied Jan. 6, 1926.)

1. **Municipal corporations** ⬤➝648 —**Roadway around county's public square held impressed with character of public street.**

Where county constructed curbing, sidewalk, and gutter around public square, and city thereafter exercised jurisdiction over roadway outside gutter, such roadway was thereby impressed with character of public street or thoroughfare.

2. **Municipal corporations** ⬤➝691—**Nuisance in street around county's public square held question for city government.**

Where county voluntarily set aside part of public square as public street, question whether hitching rack in area thus set aside was nuisance related solely to handling of traffic in public streets, and its decision was for city government, in view of Rev. St. 1911, arts. 854, 855, relating to control of streets and alleys.

Appeal from District Court, Caldwell County; M. C. Jeffrey, Judge.

Suit by the city of Lockhart and others against the Commissioners' Court of Caldwell County and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Jno. N. Gambrell and H. W. Fielder, both of Lockhart, for appellants.

E. B. Coopwood, Fred L. Blundell, and Nye H. Clark, all of Lockhart, for appellees.

McCLENDON, C. J. The city of Lockhart brought this suit against the county judge and county commissioners of Caldwell county, in their official capacity, to restrain the county officials from replacing a hitching rack around the Courthouse Square in Lockhart, which had been removed by the city officials. The trial was to a jury, but upon conclusion of plaintiff's evidence the court granted a motion on behalf of the defendants to instruct a verdict in their favor, and judgment was rendered accordingly. The appeal is by the city from this judgment.

The only question in the case is whether the evidence shows as a matter of law that the county and not the city has exclusive dominion and control over the property upon which the hitching rack was erected. We are clear in the view that this question must be answered in the negative, and will state so much of the record as we think controls the case.

The tract of land upon which the courthouse is situated, and around which the hitching rack was constructed, was a part of the original town tract of Lockhart, which was laid out upon a subdivision of the Bird Lockhart league. Caldwell county was created by legislative act, approved March 6, 1848, (Laws 1848, c. 65) which provided, among other things, that—

"The county seat of Caldwell shall be located at a town laid off on a league of land granted to Bird Lockhart, near the springs on said league, and shall be called Lockhart."

The town of Lockhart was incorporated by legislative act, approved February 10, 1852 (Sp. Laws 1852, c. 99). At just what time the town was platted the record does not show, but a number of deeds were made by the owners of the grant, conveying lots "in a town laid off on the Bird Lockhart league," in 1847. An early plat of the town was filed in the comptroller's office in 1874. The ground on which the courthouse is located is marked on this plat "Public Square." It is also similarly marked on other early plats. At a very early date the county built a courthouse in the center of this square. The record does not show the date, but plaintiff's petition alleges that the first courthouse and jail were built on the property prior to the original incorporation of the town in 1852. The county, at some date not shown by the record, erected a wooden fence, inclosing the square and provided stiles at the four sides for ingress and egress. The witnesses in the case, some of whom remembered as far back as 1879, testified that this fence was there as far back as their earliest recollections. Whether there was a hitching rack outside of this fence the record does not show. In 1888 the county removed this wooden fence and replaced it with an iron fence, which was set in on the square some little distance from the old fence, the exact distance not being given, and at the same time erected a hitching rack on the outside of this fence. This hitching rack consisted of a series of posts connected together by a wire cable, with openings provided for the entrances into the courthouse yard. About 1904 this cable was replaced by chains. In 1890 Lockhart was incorporated under the general laws as a town of over 1,000 inhabitants.

On April 3, 1893, the Lockhart city council adopted the following resolution:

"Resolved: That the city of Lockhart releases and relinquishes to the county of Caldwell, Texas, the use and occupation of the inclosed public square for the purpose of erecting a new courthouse thereon; said square to be held and used by said county of Caldwell so long as it may desire to hold and use the same for courthouse purposes, provided: That a new courthouse is erected thereon; provided further that should said county fail or decline to erect said new courthouse on said square, the city of Lockhart retains all its legal and

equitable rights and title in and to said square and the use and occupation of the same."

Whether this resolution was secured at the request of the county commissioners or the holders of the county courthouse bonds the record does not show, but it does appear that the resolution was adopted at the time of rebuilding the courthouse, and was evidently passed for the purpose of removing every doubt as to the right of the county to erect a new courthouse on the property and at the same time to preserve whatever rights the city might otherwise have in the property. In 1912, the county removed the iron fence and placed at about its location a concrete curbing, inside of which it constructed a concrete sidewalk all around the square, and on the outside and at the foot of the curb it constructed a concrete apron or gutter. The hitching rack was left on the outside of this gutter, the exact distance from it not being given. From this time on the city exercised jurisdiction over the street or roadway on the outside of this gutter, keeping the same in repair and keeping the street clean and in sanitary condition. The city macadamized or paved the street up to the curbing and surfaced it and generally exercised jurisdiction over the road or street up to the curbing. In 1917 the city, by election, adopted the commission form of government. In 1924, the city through its street commissioner had the hitching rack removed, and the county commissioners thereupon passed a resolution ordering it rebuilt and the bill of costs sent to the city. At this stage of the proceedings an injunction was sued out.

It was the contention of the city, and so testified to by its street commissioner, that the hitching rack constituted an obstruction of the street and a nuisance, and very seriously impeded and increased the cost of cleaning the street, and that traffic was impeded and blocked by horse-drawn vehicles being tethered to it and extending out some distance into the street.

The county contends that it is the fee-simple owner of the property upon which the hitching rack was erected, and had the right to maintain it there. The contention of the city, on the other hand, is that the dedication of the public square was for general public purposes and placed it under control of the city and not the county; and further that regardless of who owned the title to the property, it was dedicated and used for street purposes, and under the general powers of the city over the streets and public thoroughfares therein it had the right to determine whether hitching racks should be maintained in the streets. The record might have been more carefully prepared so as to give a more accurate picture of the situation, but we think it sufficiently shows the above facts, and that they warrant findings upholding the city's contention.

Whether the original dedication of the property as a public square vested its control in the city or county, we find it unnecessary to decide. We may assume for the purpose of this case that the county had originally the right to erect the courthouse on the property. But whether such were true, its right to do so could hardly be questioned at this time. The resolution of the city council in 1893, when the new courthouse was built, did not in any way affect the rights of the parties further than to deprive the city of any right it might have to prevent the county from using the property for courthouse purposes.

[1, 2] Whatever may have been the rights of the county originally, its act in constructing the curbing, sidewalk, and gutter, and its tacit relinquishment to the city of control over the thoroughfare thus left to public use, impressed the property, at least so long as it was so used, with the character of a public street or thoroughfare. We think this appears without question. There is no doubt that the entire square was dedicated to the public for certain public uses. To the extent that the property was necessary or was used for purposes connected with the county government or the affairs of the state or county within the powers delegated to the latter, it and not the city was sovereign. But the public thoroughfares within the territorial limits of the city are by law placed under the exclusive control of the city authorities. They alone are sovereign and represent the public in the maintenance and regulation thereof. Whether a hitching rack shall be maintained in that portion of the courthouse square which has been set aside as a thoroughfare clearly pertains to control and regulation of the public thoroughfares, and not to the administration of the county government. The county, it may be conceded, had the right to control the ground adjacent to the courthouse, and the approaches to the building; and it may also be conceded that even beyond the grounds it had the right to have maintained freedom of ingress and egress to and from the county buildings. But the matter of a hitching rack in that portion of the square which it had voluntarily set aside as a public thoroughfare was one which had relation solely to the handling of traffic in a public street, and whether it constituted a nuisance or should be removed from the highway was a question which addressed itself to the sound discretion of the city in the exercise of the sovereign powers delegated to it. R. S. arts. 854, 855; State v. Jones, 18 Tex. 874; Llano v. Llano County, 5 Tex. Civ. App. 132, 23 S. W. 1008; Oil Co. v. San Antonio (Tex. Civ. App.) 208 S. W. 177; Mercer County v. Harrisburg (Ky.) 66 S. W. 10, 56 L. R. A. 583; Samuels v. Nashville, 3 Sneed (Tenn.) 298.

We therefore conclude that the trial court was in error in peremptorily instructing the

jury to return a verdict for defendants. The record does not show whether the case was fully developed, as the instructed verdict was given after plaintiff closed its evidence and before the defendant introduced any evidence. For this reason, the judgment of the trial court is reversed, and the cause remanded for further trial.

Reversed and remanded.