### JOSEPH v. CITY OF AUSTIN et al.

#### No. 8311.

Court of Civil Appeals of Texas. Austin.

Dec. 2, 1936.

Rehearing Denied Dec. 23, 1936.

W. R. Smith, Jr., and Cofer & Cofer, all of Austin, for appellant.

A. L. Love, City Atty., of Austin, for appellees.

BLAIR, Justice.

Appellant Edward Joseph sued appellees, the City of Austin and its city manager, Adam Johnson, for damages alleged to have been caused by the summary removal of a stucco wall constructed by appellant on a portion of Split Rock avenue, a public street of said city. At the conclusion of the evidence the trial court instructed a verdict and accordingly rendered judgment for appellees; hence this appeal.

Appellant owned lot 3, block 1, in Edgemont addition to the City of Austin, abutting on Split Rock avenue, a public street of said city, which had been dedicated by map and plat to public use as a street 60 feet wide. The city had improved the middle 30 feet for vehicular use by paving and constructing a curb on each side, leaving 15 feet on each side between the curb and property lines of abutting owners for sidewalks and other uses permitted by the city. At the time in question no sidewalks had been constructed, and the 15 feet had been used by some of the abutting property owners down to the curb inclosing the vehicular portion of the street for lawns, trees, hedges, shrubbery, etc., but none of them had constructed anything of a permanent nature, except retaining walls, which would not have interfered with the construction of sidewalks.

The map and plat of Edgemont addition dedicating Split Rock avenue as a public street was executed March 28, 1927, filed for record on the same day, and recorded April 1, 1927, and the deed conveying lot 3 in said addition to Joseph referred to and made the map and plat a part of the description of the property conveyed; and the metes and bounds description contained in Joseph's deed apprised him of the fact that his property line stopped 15 feet short of the curb demarcating the vehicular portion of Split Rock avenue.

On June 2, 1930, appellant applied for a permit to erect a dwelling house on his lot, stating in his application that there would be no projection beyond his property line. On August 20, 1930, the building inspector of the City of Austin notified Joseph in writing that a stucco wall then under construction as a part of the building was on a portion of Split Rock avenue, a public street, and would have to be removed. At the time of the notice to Joseph the wall was partially (about two-thirds) constructed and extended or projected 5 or more feet on the portion of the street not used for vehicular travel and was some 7 or 8 feet high. The wall was constructed on 6x6 posts embedded in cement, with heavy timbers nailed to the posts and steel laths nailed to the timbers, and three coats of stucco placed on the laths. The wall thus constructed was substantial and was permanent in its nature.

On August 21, 1930, appellant Joseph wrote the city council of Austin, stating that his wall extended about five feet over his property line, but requesting permission to let it remain, claiming that not to do so would be a discrimination as between himself and other property owners on the same street.

On September 5, 1930, appellee Johnson wrote Joseph, as follows:

"The Council has instructed me to advise you that it will be necessary for you to remove at once the wall you have built on said property on Lot 3, Block 1, Edgemont Addition.

"Please give this your prompt attention, and oblige.

"Very truly yours,
"[Signed] Adam Johnson,
"City Manager."

Joseph received this letter and made some attempt to settle the matter with the city council, city manager, and city attorney; but on September 11, 1930, the city council passed the following resolution:

"Whereas, Edward W. Joseph is now constructing in front of his premises situated on Split Rock Avenue in Edgemont, City of Austin, a concrete wall, which is located within the area of the street dedicated for public use, and presents an obstruction within said street; therefore

"Be it resolved by the City Council of the City of Austin:

"That the City Manager be and he is hereby authorized and directed to cause said concrete wall, an obstruction, to be removed from said street."

The city manager immediately notified Joseph by registered letter of this resolution of the city council, and requested that the wall be removed. Joseph received this letter about 5 o'clock Friday, September 12, 1930, and immediately took it to his attorneys. Joseph then left the city for the week-end, without conferring with the city council. His proffered testimony, that before leaving he had instructed his contractor to remove the wall on the following Monday, was excluded, because not brought to

the knowledge or attention of appellees, and as being self-serving. On the following day, Saturday, September 13, 1930, the city manager, not having heard from Joseph, instructed Bowles, a street foreman of the City of Austin, to take his men and remove the wall, "and to be as careful as possible in taking it down, not to tear it up any more than we could help." Bowles testified that he removed the wall as carefully and with as little damage as possible, and placed the wall and debris over on appellant's lot against his house.

The above uncontroverted evidence showed the stucco wall constructed by Joseph to be permanent in nature, a substantial obstruction of the public street, and an encroachment thereon, and to be a nuisance per se, which the City of Austin had the power to summarily remove from the street. This power existed under common law, and since the City of Austin was incorporated under the Home-Rule Amendment (Const. art. 11, § 5), it also had the power as a home-rule city to regulate and control the use of its streets, and it had the power in a proper case to summarily remove obstructions and abate encroachments on its streets, and to define and abate nuisances per se summarily. Its city charter also gave the city council exclusive control and regulation of its "streets, alleys, sidewalks, etc.," and made it the imperative duty of the city council to "abate and remove in a summary manner encroachments" and obstructions thereon.

In Compton v. Waco Bridge Co., 62 Tex. 715, the city council of Waco had by ordinance directed its city marshal to remove all obstructions in certain streets leading to fords on the river, and in announcing the rule that the city had the right to summarily remove obstructions which prevented free access to the streets, the court said: "That an obstruction placed in a street or other highway, without authority of law, such as a building or a fence across the same, is a nuisance, and may be removed by the local authority, would seem to admit of no doubt. But in view of the specific authority conferred upon the city authorities of Waco, the right to exercise such power seems to be indisputable. Every person by a resort to the courts of the country has a complete remedy to prevent an arbitrary or wanton exercise of that authority. To force the municipal authorities to a suit in the courts to secure the removal of obstructions from the streets would, to a considerable extent, defeat the objects and purposes contemplated in the creation of municipal governments."

In Dozier v. City of Austin (Tex.Civ. App.) 253 S.W. 554, 556; the court held as follows: " 'Public highways belong from side to side and end to end to the public' and any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance per se, and may be abated, notwithstanding space is left for the passage of the public." To the same effect are City of Corsicana v. Zorn, 97 Tex. 317, 78 S.W. 924, and Radford Grocery Co. v. City of Abilene (Tex. Com.App.) 34 S.W.(2d) 830, affirming (Tex.Civ.App.) 20 S.W.(2d) 255.

But appellant contends that his stucco wall was not a nuisance per se, because it did not obstruct or encroach on any existing or immediate use of the street by the public. In this connection he proved that no sidewalks had been constructed on the 15-foot strip between his property line and the curb enclosing the vehicular portion of the street, and that the public had not used the 15-foot strip for any purpose. Appellant also attempted to show that his wall was a reasonable use of the 15-foot strip in comparison with the uses other abutting owners made of it on the same street. These contentions are fully answered by the above quotation from Dozier v. City of Austin, wherein the court held that streets belong to the public from side to side and end to end; and wherein it was also held that "no question of the reasonableness or unreasonableness of a permanent obstruction can ever arise." The law is settled that as against the public the city could not give the abutting property owners the right to construct permanent obstructions on any portion of a street dedicated to public use by map and plat of an addition. Where, as in the instant case, the street has been dedicated by an addition, and lots are sold with reference to the street, the city takes possession of the same as representative of the public, and by such map and plat and deeds conveying lots with reference to a street, the entire strip is "vested in the public and in the city the right to use it as a street, and the city had the right to take possession of and use said street whenever the progress of the town should make it necessary." Martinez v. City of Dallas, 102 Tex. 54, 113 S.W. 1167, affirming 109 S. W. 287. In the exercise of these duties the city is required to take possession of the

dedicated street and to preserve it, and to cause to be removed or abated any permanent structure which might interfere with its full and free use by the public. Such is not only the right and power of the city, but it is its nondelegable and inescapable duty to maintain its streets in usable condition, and to abate any permanent obstruction or encroachment which would interfere with their present, or might interfere with their future use by the public as the progress of the city may demand. City of San Antonio v. Ashton (Tex.Civ.App.) 135 S.W. 757, error refused; Coombs v. City of Houston (Tex.Civ.App.) 35 S.W.(2d) 1066; City of Lockhart v. Commissioners' Court of Caldwell County (Tex.Civ.App.) 278 S.W. 319, error refused.

The law is also settled in this connection that anything placed in a street or highway of a permanent nature, like a fence, building, or wall, is an obstruction and a nuisance per se, if such obstruction renders the street less commodious for public uses. 21 Tex.Jur. 716, § 201, and cases cited in footnotes 14 to 20. This is the rule in Texas and in all jurisdictions, notwithstanding space is left for the passage of the public. The rule and the reasons therefor are well stated in the following cases from other jurisdictions:

In Rosenthal v. City of Goldsboro, 149 N.C. 128, 62 S.E. 905, 907, 20 L.R.A.(N.S.) 809, 16 Ann.Cas. 639, the court quotes with approval the following from Tate v. Greensboro, 114 N.C. 392, 19 S.E. 767, 24 L.R.A. 671: "'Hence it is that the law gives to all such corporations an almost absolute discretion in the maintenance of their streets, considering, it seems, as is most reasonable, that wide discretion as to the manner of performance should be conferred where responsibility for improper performance is so heavily laid. * * * We think that under its charter and under the general laws of the state (2 Code 1883, c. 62) the city of Greensboro was clothed with such discretion in the control and improvement of its streets, and, if damage comes to the plaintiff by reason of acts done by it, neither negligently nor maliciously and wantonly, but in good faith in the careful exercise of that discretion, it is damnum absque injuria. Smith v. Washington, 20 How. 135, 15 L.Ed. 858; Brush v. Carbondale, 78 Ill. 74; Pontiac v. Carter, 32 Mich. 164.'"

In Rosenthal v. City of Goldsboro, supra, the court quotes with approval from the case of Chase v. City of Oshkosh, 81 Wis. 313, 51 N.W. 560, 15 L.R.A. 553, 29 Am.St. Rep. 898, as follows: "'The right of the public to the use of the street for the purpose of travel extends to the portion set apart and used for sidewalks, as well as to the way for carriages, wagons, etc., and, in short, to the entire width of the street upon which the land of the lot owner abuts. As against the lot owner, the city, as trustee of the public use, has an undoubted right, whenever its authorities see fit, to open and fit for use and travel the street over which the public easement extends to the entire width, and whether it will so open and improve it, or whether it should be so opened and improved, is a matter of discretion, to be determined by the public authorities to whom the charge and control of the public interests in and over such easements are committed. With this discretion of the authorities courts cannot ordinarily interfere upon the complaint of the lot owner so long as the easement continues to exist. * * * The public use is the dominant interest, and the public authorities are the exclusive judges when and to what extent the streets shall be improved. Courts can interfere only in cases of fraud and oppression, constituting manifest abuse of discretion.'"

In People v. Harris, 203 Ill. 272, 67 N.E. 785, 788, 96 Am.St.Rep. 304, the court quotes with approval from Elliott on Roads and Streets, as follows: "'Any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance per se, and may be abated, notwithstanding space is left for the passage of the public. This is the only safe rule, for, if one person can permanently use a highway for his own private purposes, so may all; and, if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without becoming a nuisance, there would be no certainty in the law, and what was at first a matter of small consequence would soon become a burden, not only to adjoining owners, but to all the taxpayers and the traveling public as well. Thus expediency forbids any other rule. But, even if it did not, the rule is well founded in principle; for it is well settled that "the public are entitled, not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler," and, if this be true, it necessarily follows that there can be no rightful permanent use of the way for private purposes.'"

See, also, State v. Leaver, 62 Wis. 387, 22 N.W. 576; Daublin v. New Orleans, 1 Mart.(O.S.) (La.) 185; Gregory v. Commonwealth, 2 Dana (32 Ky.) 417; Neff v. Paddock, 26 Wis. 546; Bequette v. Patterson, 104 Cal. 282, 37 P. 917.

As authority for the proposition that a municipality may ·not, by an arbitrary standard, declare that to be a nuisance which is not so in fact, appellant cites the cases of Crossman v. City of · Galveston, 112 Tex. 303, 247 S.W. 810, 26 A.L.R. 1210, and City of Texarkana v. Reagan, 112 Tex. 317, 247 S.W. 816, 818. The rule stated is not questioned. The cases deal, however, with ordinances which give a city power to define and summarily abate as nuisances dilapidated buildings within the fire limits and declare that a city cannot resort to the harsh remedy of summary destruction of such a building if it is not in fact a nuisance. The buildings were not on a public street, but were private property and on private property, and the cities were attempting to destroy them summarily because their dilapidated condition and location made them fire hazards and dangerous to the public health and to the safety of persons and property. In the instant case the private property was not dealt with because of any inherent vice rendering it a nuisance, but it became a nuisance only because appellant wrongfully placed it on a street so as to obstruct its use by the public. Anything placed in a street or highway, if of a permanent nature, like a fence, building, or wall, is an obstruction and a nuisance per se, if the right of the public to use the street is or will in the future be interfered with or impeded as to any part of the street. 21 Tex.Jur. 716, § 201. In the case of City of McAllen v. Humphreys (Tex. Civ.App.) 40 S.W.(2d) 241, on a former appeal (Tex.Civ.App.) 29 S.W.(2d) 420, cited by appellant, the court held on final trial that a building constructed partly on an alley was a nuisance per se which the city authorities had the right to summarily remove from the alley; and that as a matter of law. there were no acts of violence, malice, or force used in removing the building from the alley which would render the city liable for alleged damages.

Appellant contends, however, that his case comes within the rule that the power of summary removal of an obstruction from a street can only be exercised to the extent that the city's right is clear, and only in such manner that it does not invade such rights as from their nature need to be first lawfully determined by adjudication.

Appellant offered no proof of any possible justiciable right to construct his wall on the public street in question. His letter of August 21, 1930, admitted that the wall encroached on the public street about five feet, and he sought the permission of the city to maintain it there only because not to do so would constitute a discrimination as between himself and other abutting property owners on the same street, which question we have hereinabove determined against appellant.

Appellant's claim, that the city had abandoned the 15-foot strip on which he had constructed his stucco wall before it accepted the dedication of the 60-foot street, is without any evidence to support it. The map and plat dedicating the street 60 feet wide had been recorded many years, and lots had been sold with reference to the map and plat. Appellant's deed, dated May 1, 1930, referred to the map and plat delineating the street as being 60 feet wide, and the metes and bounds calls were for the 15-foot strip as his property line. The city had long prior to the time in question impliedly accepted the 60-foot dedication by improving the middle 30 feet for vehicular travel. The evidence on this issue is undisputed and as a matter of law showed that the city had not abandoned any portion of the 60-foot street. And even if the evidence failed to show any formal acceptance by the city of the dedication of the street, such failure will avail appellant nothing, because he and the other purchasers purchased their lots in the addition with reference to the map and plat, which delineated the street as being 60 feet wide, and in· consequence the dedication of the street became irrevocable as to such purchasers; and appellant is estopped to assert that the city had not formally accepted the dedication; and the law is settled that as against such purchasers it is not necessary to show an acceptance by the city of the dedication. City of Corsicana v. Zorn, supra; Wolf v. Brass, 72 Tex. 133, 12 S.W. 159; Coombs v. City of Houston (Tex.Civ.App.) 35 S.W. (2d) 1066; Dozier v. City of Austin (Tex. Civ.App.) 253 S.W. 554.

Although counsel for appellant have fully briefed the question of abandonment by the city of the portion of the street on which the wall was constructed, no issue of estoppel or abandonment was urged on the trial of the case. When counsel for appellees

objected to the introduction of a picture showing the unimproved condition of the 15-foot strip on which the wall was constructed as being no evidence of any estoppel, or of any abandonment of its streets by the city, counsel for appellant replied: "Of course not, they cannot abandon them, we are not contending they abandoned them; we are contending they went in there and used unnecessary force." Whereupon, the court admitted the picture in evidence.

Nor did the evidence present a justiciable issue as to whether appellant had a reasonable time, after notice to remove his wall from the street, or after notice that the city intended to remove the wall, to do so before the city removed it. Appellant was requested three times in writing to remove his wall from the street by the city authorities, but he did not do so. If appellant were entitled to notice that the city was going to summarily remove the wall from the street, he had such notice. He had notice by registered letter of the resolution of the city council directing city manager Johnson to remove the wall immediately. Appellant did nothing about the matter, except to instruct his building foreman to remove the wall on the Monday following the receipt of such notice on Friday; but of which fact he did not inform the city authorities. The city authorities notified appellant more than twenty days before it removed the wall that it was in the street, and by three written communications requested him to remove it. The city had the right to remove the wall summarily. Ordinarily, notice of summary action is not necessary. The term "'summary,' as applied to process, means immediate, instantaneous, in contradistinction from the ordinary course, by emanating and taking effect without intermediate applications or delays." Words and Phrases, First Series, vol. 7, p. 6786; Gaines v. Travis, Fed.Cas. No. 5,180, 8 N.Y.Leg.Obs. 45. Webster defines the term "summary manner" as something "done without delay or formality; quickly executed, as a summary process." No doubt in many instances the exigencies of the case would require the immediate removal of an obstruction from a street without notice. In any event, under the uncontroverted facts of this case, appellant had been given a reasonable time to remove his wall from the street after notice to do so.

The uncontroverted evidence showing that the city had the power to summarily remove the wall from the street, the remaining questions relate to whether in the exercise of such power the city acted with reasonable care and prudence and so as to not unnecessarily damage the wall or the material in it while removing it from the street and placing it on the premises of appellant. We have reached the conclusion that appellant's evidence was insufficient as a matter of law to show any such damage, or the amount thereof, or that the premises of appellant were damaged in any manner by placing the wall and material thereon.

By resolution the city council directed its city manager to remove the wall from the street. He ordered the street foreman to remove the wall, and directed that it be carefully removed, so as to do as little damage to the wall and property of appellant as possible. The street foreman, a witness for appellant, testified that he did remove the wall and material therein with as little damage as was possible; and that he carefully placed the wall and material on the premises of appellant against his house. He took the wall down in sections, except the portion on which there was no stucco. As to this portion he drew the nails out and placed the timbers on the premises of appellant. The uncontroverted evidence showed that the wall was of such structure and character that it had to be damaged to some extent in removing it from the street. All witnesses agreed that the wall would be damaged least by taking it down in sections. No witness testified as to any particular portion of the wall that was unnecessarily damaged in removing it from the street. One witness testified that the wall was "pretty well torn up"; but he did not specify how it was torn up, nor that it was unnecessarily torn up or damaged. He further testified that some of the posts were broken off, just how many he did not know. Pictures of the sections of the wall and the premises on which they were placed are before us, and while they show the various sections into which the wall was cut and that they and the other timbers from the wall covered most of appellant's back yard, they do not and could not, without explanation, show that the wall and material therefrom were unnecessarily damaged by the city employees in removing them from the street.

Nor did appellant offer any evidence as to the extent or the amount of any unnecessary damages done to the wall or

material therein in removing them from the street and placing them on the premises of appellant. Appellant testified that he could have removed the wall from the street for between $200 and $300; and that it cost him between $375 and $390 to rebuild the wall on his premises. But this evidence constitutes no proof of any unnecessary damages done to the wall and the material therein, nor the amount of any such damages. Having wrongfully built his wall in the street, appellant was not entitled to any pay for removing it. He cites as his proper measure of damages the statement from City of Texarkana v. Reagan, supra, that "if * * * the building was a nuisance in fact, then the defendant in error is entitled only to the reasonable value of the material therefrom after its demolition, less the reasonable cost of the abatement of the nuisance." Under his proof and this rule of damages, appellant was not entitled to recover anything. The city removed the wall and the material therein from the street and placed them on appellant's premises. He therefore received, not the value of the material after the wall was torn down and removed, but the wall and material therein themselves. Under the rule stated and as applied to this case, appellant would have to prove that the wall and material therein were unnecessarily damaged in removing them from the street; and such damages, less the reasonable cost of abating the nuisance created by his wrongfully building the wall on the street, would have been the amount he was entitled to recover. No proof was made as to any unnecessary damages done to the wall or material, nor as to the amount of such damages. Therefore, no jury issue was presented by the facts either as to any unnecessary damages to the wall or material, or as to the amount of such damages.

But appellant contends that acts of the city and Johnson in directing that the wall and material therefrom be placed on appellant's premises against his house was a trespass rendering both of them liable for damages as a matter of law. This proposition is overruled for two reasons. In the first place, there was no evidence of any damages done to appellant's premises by placing the wall and material thereon. In the second place, appellant had no right to build his wall on the street, and his conduct in so doing was wrongful. The city had the right to direct its city manager to summarily remove the wall from the street, and had the right in removing the wall and material from the street, of reasonable entry on the premises of appellant to place his wall and material thereon. About as clear a statement of this rule as has been found is that made in volume 1 of the Restatement of the Law of Torts, § 199, as follows: "One is privileged to enter land in the possession of another, at reasonable times and in a reasonable manner, for the purpose of relieving land, of which the actor is in possession, of a chattel which has come upon his land otherwise than with the actor's consent or by his tortious conduct or contributory negligence, and to the possession of which the other was entitled at the time it came there."

Nor was there any evidence that either the city or its city manager acted wantonly, willfully, or maliciously in causing the wall to be removed as an obstruction on the street; nor that either of them so acted in causing unnecessary damages to the wall or material therein while removing them from the street and placing them on the premises of appellant. Suffice it to say, in this connection, that the undisputed facts showed that Joseph himself was the wrongdoer in building his wall on the public street. He tried through the city attorney and city council to get permission to retain his wall on the street, or to have the matter litigated in court. The city council, which alone had authority to act, refused all his requests, and after hearings given Joseph and his attorney, continuously notified him of its decision, and requested him to remove his wall from the street. He did not do so, and the city by resolution instructed Johnson, its city manager, to remove the wall from the street. Every act of Johnson in the matter, except one, was in writing, and was as city manager. The one act not in writing was a telephone conversation which Joseph testified Mr. Reed had with Johnson; Joseph claiming to have sat near Reed and to have heard both ends of the conversation. Reed was interceding for Joseph, and in the conversation Joseph heard Johnson say, in effect, that he was getting ———— tired of fooling with Joseph. This statement did not show that Johnson acted with malice in causing the wall to be removed from the street, nor that he acted independently of the city so as to render him personally liable for the city's acts in removing the wall summarily. There was no evidence that Johnson tried to improperly cause or persuade the city to summarily remove the

wall from the street. Every written act of Johnson as city manager in the matter was courteous and respectful, and we conclude that as a matter of law that neither the city nor Johnson acted with violence, malice, or unnecessary force in removing the wall from the street and placing it on the premises of appellant. Having so concluded, no issue of exemplary damages could have arisen in the case.

The judgment of the trial court will be affirmed.

Affirmed.