

THE ATTORNEY GENERAL
OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable Wm. P. Davis
County Auditor
Ellis County
Waxahachie, Texas

Dear Sir:

Opinion No. 0-7140
Re: (1) Authority of home rule city
to install parking meters on county
property surrounding courthouse;
(2) Legality of county installing
parking meters on county property
surrounding courthouse.

We are in receipt of your letter of recent date requesting the opinion of this department on the above stated matters. We quote from your letter as follows:

"Could parking meters be installed on county property surrounding the courthouse?

"If the above is answered in the affirmative, could they be installed by the City of Waxahachie with revenue derived therefrom going to the city?

"If parking meters could be installed by the county with all revenue going to the county, could the commissioners' court enter into a contract with a parking meter concern whereby the private company would install them and get 75% of the revenue from the parking meters until such time as they are paid for in full; thereafter the county receiving all the revenue from the meters?

"The City of Waxahachie is contemplating the installation of parking meters on city streets and has appeared before the Ellis County Commissioners' Court for permission to install them at the curb surrounding the courthouse. The county property line extends 15 feet into the street and thus the installation would be on county-owned property."

According to information furnished by the Office of the Secretary of State, the City of Waxahachie is a home rule city. With reference to the dominion, control and jurisdiction of the streets in a home rule city, we call your attention to the following language contained in Article 1173, Revised Civil Statutes:

"Cities adopting the charter or amendment hereunder shall have full power of local self government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty: • • •

"16. To have exclusive dominion, control and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city . . .

"20. To license, operate and control the operation of all character of vehicles using the public streets, including motorcycles, automobiles or like vehicles."

In 39 Texas Jurisprudence, "Streets," Section 56, pp. 597-598, we find the following language:

". . . A municipal corporation has paramount jurisdiction and control over its streets; and the county has no control over them. This is true of a roadway which the county has relinquished to public use; nor does any distinction exist by reason of the fact that the county owns the fee in the street. . . ."

With reference to the city's authority and control of a city street, the fee and title to which was in the county, we call your attention to the following language contained in the opinion of the Court of Criminal Appeals in the case of Ex Parte Bradshaw, 159 S.W. 259, which involved the validity of a city ordinance regulating peddling upon the streets:

"Appellant's contention that he was on that part of the public square, the fee and title to which was in the county, and that the county gave him authority to establish and maintain his peddling business there, cannot be maintained. Where he located and kept his wagon and horses in his peddling business, as shown, was in the public street or square. Hill County could no more give him power or authority to obstruct the streets or public square than any other corporation or person could do. Clearly this location was within the city limits, and on the public streets or square, paved and used for public uses, and the city, and not the county had jurisdiction, power, and authority over it, at least, for street purposes and for a public square for the public." (Underscoring ours throughout)

In the case of City of Lockhart v. Commissioners' Court of Caldwell County, 278 S.W. 319 (error refused), which involved the right of the county to maintain a hitching rack upon an area which the county had voluntarily set aside from the public square as a public street, the Court held that the maintenance of a hitching rack in such area was related solely to the handling of traffic of a public street and that such matter was therefore subject to the jurisdiction and control of the city government. We quote the following language from the Court's opinion:

"Whatever may have been the rights of the county originally, its act in constructing the curbing, sidewalk, and gutter, and its tacit relinquishment to the city of control over the thoroughfare thus left to public

use, impressed the property, at least so long as it was so used, with the character of a public street or thoroughfare. We think this appears without question. There is no doubt that the entire square was dedicated to the public for certain public uses. . . . the public thoroughfares within the territorial limits of the city are by law placed under the exclusive control of the city authorities. They alone are sovereign and represent the public in the maintenance and regulation thereof. Whether a hitching rack shall be maintained in that portion of the courthouse square which has been set aside as a thoroughfare clearly pertains to control and regulation of the public thoroughfares, and not to the administration of the county government. The county, it may be conceded, had the right to control the ground adjacent to the courthouse, and the approaches to the building; and it may also be conceded that even beyond the grounds it had the right to have maintained freedom of ingress and egress to and from the county buildings. But the matter of a hitching rack in that portion of the square which it had voluntarily set aside as a public thoroughfare was on which had relation solely to the handling of traffic in a public street, and whether it constituted a nuisance or should be removed from the highway was a question which addressed itself to the sound discretion of the city in the exercise of the sovereign powers delegated to it. R.S. arts. 854, 855; State v. Jones, 18 Tex. 874; Llano v. Llano County, 5 Tex. Civ. App. 132, 23 S.W. 1008; Oil Co. v. San Antonio (Tex.Civ. App.) 208 S.W. 177; Mercer County v. Harrisburg (Ky.) 66 S.W. 10, 56 L.R.A. 583; Samuels v. Nashville, 3 Sneed (Tenn.) 298."

In the case of City of Galveston v. Galveston County, 159 S.W. (2d) 976, (error refused), which involved the authority of the city to install parking meters on Seawall Boulevard, which had been built by the county as a seawall, the Court pointed out specifically that the city government had jurisdiction over the Boulevard as a street, although in deciding the case, the Court held that, in this particular instance, the right of the public to use the Boulevard as a street was subordinate and inferior to the right of its primary use as a seawall. We quote the following from the Court's opinion:

"The right of a City Council to establish reasonable traffic regulations includes, of course, the right to decide that the installment of parking meters in certain localities where the traffic is dense is a reasonable traffic regulation and pass an appropriate ordinance to effect such regulation, and such decision is treated as controlling on the courts, unless the unreasonableness of the ordinance is fairly free from doubt. Harper v. City of Wichita Falls, Tex. Civ. App., 105 S.W. 2d 743, writ refused. The determination by the City to install the proposed parking meters at the proposed places on Seawall Boulevard within the City of Galveston is a determination by the City of the reasonableness of so regulating traffic at such points.

" . . .

Hon. Wm. P. Davis, page 4 (O-7140)

". . . Now the primary purpose for which the Boulevard was constructed
was that it should serve to protect, support and brace the seawall. In-
deed, the Boulevard, inclusive of the sand-fill and the covering pavement
and cement walks, form component parts of a complex whole; and such whole
is primarily dedicated to being used as a barrier to storm waters from
the Guld, and to this use it must be primarily devoted. The right there-
fore of the public to the use of the Boulovard as a street or highway
within the City of Galveston is subordinate to and inferior to the right
of its use as an integral part of the barrier erected against storm waters
from the Gulf. So, when the Commissioners' Court decided that the proposed
installation of the parking meters would constitute a lessening of the
efficiency of the Boulevard as a barrier against storm waters in the event
of a major storm, it was unquestionably acting within the sphere of its
jurisdiction. That is not to say that the City Council was not acting with-
in the sphere of its jurisdiction when it decided to install the parking
meters; but that the jurisdiction of the City, which in this instance
serves but a subordinate right of the public, must yield to the jurisdiction
of the Commissioners' Court which in this instance serves a superior right
of the public."

It is indicated in your letter that the area where it is contemplat-
ed that the parking meters will be installed involves a portion of the
county property which has been set aside and used by the public for thorough-
fare or street purposes. In view of the above cited authorities and in view
of the facts given, it is our opinion that the matter of handling traffic
upon such public street or thoroughfare within the City of Waxahachie is
within the sphere of the exclusive jurisdiction of the city government and
thar said city would be authorized to install parking meters at the proposed
location and receive the revenue therefrom, provided said city has appropri-
ate powers vested in it under its charter and has passed an appropriate
ordinance to effect such regulation. It is to be understood, however, that
we are not herein passing upon any matters as to whether the city has prop-
erly proceeded to exercise the authority granted to home rule cities under
the above quoted sections of Article 1175.

Since we have held herein that the matter of control and regulation
of traffic upon public streets and thoroughfares within the city, including
the installation of parking meters, is within the exclusive jurisdiction of
the city government, it is our further opinion that the county is not legal-
ly authorized to install parking meters at the proposed location. The fore-
going holding precludes the necessity for discussing the other questions
raised in your request for an opinion.

We trust the above will satisfactorly answer your questions.

JAE:LJ
APPROVED MAR 18, 1948
/s/ Grover Sellrs
ATTORNEY GENERAL OF TEXAS
Approved Opinion Committee
By B W B - Chairman

Yours very truly

ATTORNEY GENERAL OF TEXAS
By /s/ J. A. Ellis
J. A. Ellis
Assistant