

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00126-CV

MARTA CARREJO MARTINEZ        APPELLANT

V.

JANET D. MANGRUM        APPELLEE

----------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In this interlocutory appeal from a temporary injunction, Appellant Marta Carrejo Martinez claims the trial court abused its discretion by excluding her from real property located at 2109 Flemming Drive, Fort Worth, Texas, (the Property) and by enjoining her from coming within 300 feet of the Property. We affirm the trial court's temporary injunction.

---

[1]See Tex. R. App. P. 47.4.

## I.  Background

This is a dispute over the ownership of the Property.  Appellee Janet D. Mangrum filed a declaratory judgment action seeking a declaration that she is the legal and equitable owner of the Property or, in the alternative, has a right of title and ownership of the Property superior to that of Martinez, and that Martinez's claim of ownership of the Property constitutes a trespass against Mangrum's title. Mangrum also asserted a fraud claim against Martinez, claiming that Martinez forged Mangrum's signature on a warranty deed purporting to convey the Property to Martinez and filed it in the Tarrant County property records.

At the time the suit was filed, Martinez was in possession of the Property. Mangrum sought and obtained a temporary restraining order restraining Martinez from (1) taking and/or maintaining possession of the Property; (2) possessing, using, occupying, selling, encumbering, or exercising any rights over the Property normally associated with ownership of real property; and (3) coming within 300 feet of the Property.[2]  Martinez subsequently vacated the Property.

At the hearing on her request for a temporary injunction, Mangrum testified that she purchased the Property from Jeanette Matthews on June 28, 2012, for

---

[2]In addition to her declaratory judgment and fraud claims, Mangrum asserted an assault-by-threat-of-bodily-injury claim against Martinez.  The temporary restraining order, as well as the temporary injunction, prohibited Martinez from coming within 300 feet of Mangrum or Mangrum's residence and from engaging in behavior that could be considered threatening or intimidating to Mangrum or could be considered a threat of bodily injury to Mangrum.  Because Martinez does not challenge these portions of the temporary injunction, we recite only those facts necessary to address her complaints on appeal.

$10.00. According to Mangrum, she was going to purchase the Property from Matthews under a lease-to-own agreement, but the agreement had not been finalized. The agreed-upon purchase price was $5,000.00, which was to be paid in monthly installments of $750.00, and Mangrum was to be responsible for taxes and insurance.

Immediately after purchasing the Property, Mangrum took possession and began cleaning out and remodeling the residence on the Property. In early July 2012, Mangrum discovered Martinez inside the residence. When Mangrum asked her to leave, Martinez began screaming and cursing, and Mangrum was forced to call the police. According to Mangrum, Martinez gained possession of the Property on July 15 or 16 by kicking in the door to the residence on the Property and changing the lock. Mangrum testified that after Martinez gained possession of the Property, Martinez removed flowers, shrubbery, and trees from the front and the south side of the Property. Mangrum also testified that Martinez had not paid the property taxes due and owing on the Property.

In support of her claim of ownership, Mangrum offered into evidence a "Warranty Deed Re-Filed for Correction" executed on June 28, 2012, by which Matthews conveyed the Property to Mangrum.[3] Mangrum testified that she

---

[3]The "Warranty Deed Re-Filed for Correction" was filed on July 16, 2012. The "Warranty Deed Re-Filed for Correction" is virtually identical to a deed executed and filed with the Tarrant County Clerk on June 28, 2012, except for handwritten notations changing the subdivision name from Maxwell to Carver Heights in the legal description and titling the deed "Warranty Deed Re-Filed for Correction."

3

believes she has a 100 percent ownership interest in the Property because Matthews informed her that she owned the entirety of the Property when Matthews sold it to her. Mangrum conceded she did not have a title history search performed on the Property.

Mangrum also offered into evidence a "Warrant Deed" dated October 26, 2012, and filed with the Tarrant County Clerk purporting to convey ownership of the Property from her to Martinez. Mangrum testified that she did not sign the "Warrant Deed," that the signature on the "Warrant Deed" was not hers, and that her birthdate as listed on the "Warrant Deed" was incorrect. She further testified that she believed that Martinez signed her name to the "Warrant Deed." Mangrum also offered into evidence a letter from the Texas Secretary of State stating that the notary who notarized the "Warrant Deed" was not listed as a commissioned notary at the time the "Warrant Deed" was executed.

Martinez contends that she and Mangrum each own an undivided one-half interest in the Property. At the temporary injunction hearing, Martinez did not testify, but the trial court admitted into evidence certified copies of deeds and affidavits filed with the Tarrant County Clerk that Martinez contends support her contention. According to Martinez's evidence, in July 1958, Robert and Pearl Patton conveyed the Property to Charles C. and Gladys Thelma Lincoln. Martinez also introduced into evidence three affidavits of heirship. One, which was filed in February 1994, states that Gladys and Charles Lincoln purchased the Property in 1958 and that Gladys Lincoln died on April 6, 1972, leaving two

4

children, Claudia Elizabeth and Curtis Burl. According to the affidavit, each child inherited Gladys Lincoln's "one half community property ownership," and as the acting executor of the property homestead and the estate, Curtis Faulkner "retains [a] 50% ownership/heirship of [the] family estate." The other two affidavits of heirship were executed in June 2012 and were filed by Martinez on June 20, 2012. The affiants, Trinidad Monroy and Ursula Brown, state that they were friends of Gladys Velma Faulkner Lincoln. In contrast to the affidavit of heirship filed in 1994, both affidavits state that Curtis B. Faulkner, Sr. was Gladys Lincoln's only child and/or heir and that "[t]here were no other children born or adopted by [Gladys Lincoln]."[4]

Martinez also offered into evidence a deed by which Charles Lincoln conveyed an undivided one-half interest in the Property to Ora Lee Lincoln in October 1982. In June 2009, Ora Lee Lincoln executed a "Warranty Deed Re-Filed for Correction" conveying the Property to Matthews.[5] Finally, Martinez

---

[4]Martinez also offered into evidence an affidavit of fact signed by Nancy A. Dziekowicz, Gladys Velma Faulkner Lincoln's granddaughter, which states, "To the best of my knowledge all information granted in those certain Affidavits of Heirship, executed by Ursula Brown and Trini Monroy on _____ are true and correct." The blank for the date of execution of Brown's and Monroy's affidavits was left blank. Dziekowicz's affidavit was also filed by Martinez in June 2012.

[5]The "Warranty Deed Re-Filed for Correction" was executed on June 19, 2009, and was filed on July 16, 2012. The "Warranty Deed Re-Filed for Correction" is virtually identical to a deed executed on September 22, 2009, and filed on May 25, 2012, except for handwritten notations changing the subdivision name from Maxwell to Carver Heights in the legal description and titling the deed "Warranty Deed Re-Filed for Correction."

5

presented a quitclaim deed executed by Faulkner on July 12, 2012, in which he conveyed his title and interest in the Property to Martinez.

At the conclusion of the hearing, the trial court granted Mangrum's request for temporary injunctive relief, enjoining Martinez from (1) taking and/or maintaining possession of the Property; (2) possessing, using, occupying, selling, encumbering, or exercising any rights over the Property normally associated with ownership of real property; and (3) coming within 300 feet of the Property.

## II. Standard of Review

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. A temporary injunction is an extraordinary remedy and will not issue as a matter of right. *Id.* To obtain a temporary injunction, an applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

In an appeal from an order granting or denying a temporary injunction, the scope of review is restricted to the validity of the order granting or denying relief. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 559 U.S. 1036 (2010). Whether to grant or deny a request for a temporary injunction is within the trial

6

court's discretion, and we will not reverse its decision absent an abuse of discretion. *Butnaru*, 84 S.W.3d at 204; *Frequent Flyer Depot*, 281 S.W.3d at 220. Accordingly, when reviewing such a decision, we must view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion. *Frequent Flyer Depot*, 281 S.W.3d at 220. A trial court does not abuse its discretion if it bases its decision on conflicting evidence and at least some evidence in the record reasonably supports the trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Frequent Flyer Depot*, 281 S.W.3d at 220. A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts. *See State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975).

### III. Analysis

In her sole issue, Martinez argues that the trial court abused its discretion by granting the temporary injunction because Mangrum failed to establish that she suffered or would suffer an irreparable injury, the temporary injunction altered the status quo, and Mangrum did not prove that she had a probable right to the relief sought. We disagree.

First, Martinez argues that Mangrum failed to establish that she suffered or would suffer an irreparable injury because she can be adequately compensated by damages. An injury is irreparable if the injured party cannot be adequately

7

compensated in damages or if the damages cannot be measured by any certain pecuniary standards. *See Butnaru*, 84 S.W.3d at 204. The evidence presented at the temporary injunction hearing established that Martinez's continued possession of the Property would result in Mangrum's loss of use and enjoyment of the Property. Moreover, Mangrum's testimony established that Martinez was not paying the property taxes due and owing on the Property, creating a risk that Martinez could encumber the Property with tax liens. Finally, Martinez filed a forged "Warrant Deed" with the Tarrant County Clerk purporting to convey the Property to Martinez. Viewing the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, we conclude that Mangrum proved she could not be adequately compensated by damages or her damages could not be measured by any certain pecuniary standards. *See id.*

Next, Martinez asserts that the trial court's temporary injunction altered rather than preserved the status quo because Martinez's possession of the Property was terminated. As stated above, a temporary injunction's aim is to preserve the status quo of the litigation's subject matter. *Id.* "Status quo, in cases involving possession of real property, is the last actual, peaceable, non-contested status of the parties and real property which existed immediately prior to the pending lawsuit." *Dyer v. Weedon*, 769 S.W.2d 711, 715 (Tex. App.—Waco 1989, no writ) (citing *Owens v. Texaco, Inc.*, 368 S.W.2d 780, 783 (Tex. Civ. App.—Beaumont 1963, no writ) and *Cornett v. Reynolds*, 289 S.W.2d 660, 662 (Tex. Civ. App.—Amarillo 1956, writ ref'd n.r.e.)); *see also Simms v. Reisner*,

8

134 S.W. 278, 280 (Tex. Civ. App—Galveston 1911, no writ) ("[I]t is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of the title, except in cases in which the possession has been forcibly or fraudulently obtained . . . [and the injunction is necessary so that] the original status of the property [may] be preserved pending the decision of the issue.").

Even though Martinez was in possession of the Property from July 2012 until shortly after the temporary restraining order was issued in March 2013, her possession was not peaceable or non-contested. According to Mangrum, Martinez took possession of the Property by force, kicking in the door to the residence and changing the lock. We conclude Mangrum's possession of the Property was the last peaceable, uncontested status of the parties and the Property. Thus, the trial court did not abuse its discretion by returning possession of the Property to Mangrum. *See Dyer*, 769 S.W.2d at 715; *Simms*, 134 S.W. at 280.

Finally, Martinez contends Mangrum failed to prove that she has a probable right to the declaratory relief sought because Mangrum cannot be declared the sole owner of the Property for the reason that Martinez and Mangrum each own an undivided one-half interest in the Property. A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it. *Argyle Indep. Sch. Dist. ex rel. Bd. of Trs. v. Wolf*, 234 S.W.3d 229, 236 (Tex. App.—Fort Worth 2007, no pet.). But an applicant for a

9

temporary injunction is not required to establish that he will ultimately prevail at trial. *In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d 343, 345 (Tex. App.—Texarkana 1999, no pet.).

Here, Mangrum is seeking a declaration that she is the legal and equitable owner of the Property or, in the alternative, has a right of title and ownership of the Property superior to that of Martinez, and that Martinez's claim of ownership of the Property constitutes a trespass against Mangrum's title. At the temporary injunction hearing, Mangrum presented the warranty deed conveying the Property from Matthews to Mangrum. Mangrum further testified that her signature on the "Warrant Deed" purporting to transfer the Property to Martinez was forged and was notarized by a notary who was not a commissioned notary at the time the "Warrant Deed" was allegedly executed.

Martinez introduced evidence of a quitclaim deed executed by Faulkner on July 12, 2012, in which he conveyed his title and interest in the Property to Martinez. A warranty deed conveys property, but a quitclaim deed only conveys the grantor's right in the property, if any. *Geodyne Energy Income Prod. P'ship I–E v. Newton Corp.*, 161 S.W.3d 482, 486 & n.12 (Tex. 2005) (explaining that a quitclaim deed conveys a grantor's complete interest or claim in certain real property without warranting or professing that the title is valid). A quitclaim deed conveys upon its face doubts about a grantor's interest. *Id.* at 487. A quitclaim deed does not establish title in the person holding the deed, but merely passes whatever right, title, or interest the grantor has in the property. *Rogers v. Ricane*

*Enters., Inc.*, 884 S.W.2d 763, 769 (Tex. 1994). Thus, Martinez received whatever right, title, or interest Faulkner had in the Property, which is unclear from the affidavits of heirship introduced by Martinez. Therefore, we conclude, without making any determination on the merits, that the trial court did not abuse its discretion in finding a probable right to recover on Mangrum's claims for declaratory relief.

Accordingly, we overrule Martinez's sole issue.

### IV. Conclusion

Having overruled Martinez's sole issue, we affirm the temporary injunction.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DELIVERED: April 10, 2014

11